**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 02-CR-1129 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Curtis Diggs, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Since November 2023, Curtis Diggs, a federal prisoner in his mid-50s, has endured four surgeries for a detached retina and cataracts. He has served all but three months of his sentence for a supervised release violation related to a nonviolent drug trafficking offense. Diggs has filed an emergency motion for compassionate release, claiming severe eye pain and vision loss in his right eye. He argues that the Bureau of Prisons ("BOP") has ignored doctors' orders since August 2024 to schedule follow-up care with an ophthalmologist. The government does not dispute that Diggs risks losing sight in his right eye without this care, as confirmed by two BOP medical staff members. *See* Emergency Mot. Compass. Release 1–3, ECF No. 817; Reply 4–8, ECF No. 826; Suppl. Resp. (Feb. 21, 2025), ECF No. 844. Despite multiple chances, the government has not justified the BOP's failure to provide necessary care. *See* Suppl. Reply 1 (Feb. 28, 2025), ECF No. 848. For the reasons discussed below, the court finds extraordinary and compelling reasons to reduce Diggs' sentence to time served, allowing him to be released three months early to receive the medical attention he urgently needs.

## I. Background

Prior opinions and orders describe the facts and procedural history in detail. *See United States v. Diggs*, No. 02-CR-1129-1, order at 1–5 (N.D. Ill. Oct. 9, 2020) (ECF No. 753); *United States v. Diggs*, No. 02-CR-1129-1, 2016 WL 11600458, at 1 (N.D. Ill. June 8, 2016) (ECF No. 655) (denying motion for sentence reduction); *Diggs v. United States*, No. 13 C 9327, 2014

WL 1647018, at *1 (N.D. Ill. Apr. 23, 2014) (denying 28 U.S.C. § 2255 motion to vacate sentence). The following paragraphs summarize the pertinent procedural and factual history.

**A. Original Charges**

In accordance with a written plea agreement, Diggs pled guilty to a charge of possessing five or more kilograms of cocaine with intent to distribute it. *See* 21 U.S.C. § 841(a); Plea Agreement (Aug. 14, 2003), ECF No. 118; minute order, ECF No. 119 (change of plea hearing). In 2009, this court sentenced Diggs below the guidelines range (30 years–life) to serve 20 years' imprisonment, followed by 5 years' supervised release. *See* J. 2–3 (Apr. 22, 2009), ECF No. 576.

In October 2020, the early days of the COVID-19 pandemic, this court granted Diggs' motion for compassionate release and reduced his prison term to the time he had served. *United States v. Diggs*, No. 02-CR-1129-1, order at 8–9, 13 (N.D. Ill. Oct. 9, 2020), ECF No. 753. In addition to evidence of his rehabilitation, the record showed that Diggs had been diagnosed with medical conditions, such as asthma and hypertension, that put him at serious risk of death or severe complications from COVID-19 (there were no vaccines at the time), and the virus that causes it was spreading rapidly through the BOP facility where Diggs was housed. *See id.* at 8-12. Upon his October 2020 release, Diggs began serving his five-year supervised release term.

**B. Supervised Release Revocation and the Pennsylvania Case**

About fourteen months later, in December 2021, Diggs' probation officer notified this court that he was likely to be charged in the United States District Court for the Western District of Pennsylvania ("Pennsylvania court"). *See* Probation Officer's Report 2 (Dec. 14, 2021), ECF No. 770. A grand jury indicted Diggs in the Pennsylvania court, charging him with possession of five or more kilograms of cocaine and 28 grams of cocaine base (crack) with intent to distribute. *See* Superseding Indictment, *United States v. Curtis Diggs*, No. 2:21-CR-364-2 (W.D. Pa. Feb. 1, 2022) [hereinafter, "Pennsylvania case"] (Pa. case, ECF No. 45, and in this record at ECF

No. 776-1). Diggs spent approximately eighteen months in pretrial custody for the charges in the Pennsylvania case.

On July 24, 2023, Diggs pleaded guilty in the Pennsylvania court to a lesser-included offense specifying no amount of cocaine, thereby eliminating the statutory mandatory minimum. *See* Plea Agmt. 1, 4, Pa. case, ECF No. 415 (July 24, 2023). The recommended term of imprisonment under the guidelines was 10–16 months. *See* Stipulation of Sentencing Guidelines 1–2, ECF No. 420 (Aug. 1, 2023). By that point, Diggs had spent about eighteen months in custody, so he waived a pre-sentence report. *See* Consent Mot. Waive PSR 1–2, Pa. case, ECF No. 421 (Aug. 1, 2023). On August 23, 2023, the Pennsylvania court sentenced Diggs to serve a 16-month term of imprisonment. *See* J. 1, Pa. case, ECF No. 456. Diggs was then transported to Chicago to answer the petition to revoke his term of supervised release.

This court held a supervised release revocation hearing on December 6, 2023. Diggs admitted two of the three supervised release violations (the government dismissed the third) based on the drug trafficking offense charged in the Pennsylvania case. *See* J. 1 (Dec. 11, 2023), ECF No. 810. This court sentenced Diggs to a three-year prison term, the maximum allowed by the applicable statute.

On April 4, 2024, the Pennsylvania court reduced Diggs' sentence by two months. *See* Am. J. 1, Pa. case, ECF No. 554. That occurred because of a retroactive amendment to the sentencing guidelines eliminating so-called "status points" under U.S.S.G. § 4A1.1. The amendment reduced Diggs' recommended guidelines range to 8–16 months. *See* Consent Mot. Reduce Sent. 2, 4, Pa. case, ECF No. 553 (Apr. 3, 2024).

This court next heard from Diggs when it received an undated letter from him; the letter was entered on the docket on July 23, 2024. ECF No. 812. Diggs explained that the Pennsylvania court had reduced his sentence from 16 to 14 months and requested that his revocation judgment in this case be amended to ensure that the two-month reduction was properly credited toward his sentence. *See id.* at 1. Granting Diggs' letter motion, this court amended the revocation judgment in pertinent part to read: "It is the intent of this court that

Defendant receive credit toward his three-year sentence in the instant case, No. 02-CR-1129 (N.D. Ill.), for all time he spent in custody beyond the 16-month (now 14-month) sentence imposed by the United States District Court for the Western District of Pennsylvania in case No. 2:21-CR-364." Am. J. 2, (July 26, 2024), ECF No. 814.

**C. Emergency Motion for Compassionate Release**

On December 30, 2024, the Clerk docketed Diggs' pending emergency motion for compassionate release. ECF No. 817. He made two arguments. First, he asserted the BOP had not properly credited the Pennsylvania court's April 2024 two-month sentence reduction toward his revocation sentence, despite the July 2024 amended judgment. Second, Diggs argued that the BOP was not caring adequately for his serious medical needs.

**D. Resolution of Two-Month Credit Issue**

After investigating, the government confirmed that the BOP had not credited two months toward Diggs' sentence. *See* Gov't Suppl. Resp. 1–3 (Feb. 3, 2025), ECF No. 832. The government "agree[d] that defendant should receive credit for the two months he overserved on the Pennsylvania case, and that the credit should be applied toward his revocation sentence in this case." *Id.* at 3. To resolve the credit issue, the government proposed amending Diggs' revocation judgment to include a two-month downward departure. Following a telephonic hearing on February 14, 2025, at which Diggs was present, the court entered an amended judgment by consent of all parties. *See* minute entry, ECF No. 840; Am. J., ECF No. 841.

In a letter dated April 8, 2025, Diggs confirms that the BOP has recomputed his sentence based on the February 2025 amended judgment, and his projected release date has become August 24, 2025. ECF No. 850 at 1. Using Diggs' revocation sentencing date of December 6, 2023, as a starting point, he has served more than eighty percent (about 17 of twenty months) of his projected sentence.[1]

---

1. The court was not given a computation sheet showing BOP's calculations, so the court has calculated the percentage to the best of its ability.

**E. Medical Condition and Care**

In response to Diggs' arguments concerning medical care, the government filed more than 500 pages of BOP medical records, including records from Diggs' visits to outside medical providers.[2] *See* ECF No. 821 (filed under seal).

Diggs has undergone four eye surgeries for a detached retina in the last two years. The first occurred on November 7, 2023, at Loyola University Medical Center in Chicago. *See id.* at 3324–3327, 3339–3347. At that time, Diggs was awaiting revocation sentencing, and he was housed at the Metropolitan Correctional Center in Chicago. A November 14, 2023, BOP administrative note listed Diggs' pre- and post-operative diagnoses as "Retinal Detachment with multiple retinal breaks" and "Choroidal detachments." *Id.* at 3197. On December 11, 2023, Diggs underwent a second surgery at Loyola University Medical Center to repair a retinal detachment. *See id.* at 3310–20.

About five months later, a surgeon affiliated with the University of Kentucky Hospital performed a cataract removal and Pars Plana Vitrectomy on May 10, 2024. *See id.* at 3625–40. A March 26, 2024, administrative BOP note preceding this surgery also states that Diggs was diagnosed with "glaucoma due to silicone oil" and that he had a cataract in his right eye. *Id.* at 3427. Following an emergency room visit on May 25, 2024, for which the notes say Diggs was experiencing pain and that his "vision [in his right eye] is almost gone to 0," *id.* at 3646, Diggs underwent a fourth surgery to repair retinal detachment on June 13, 2024. *See id.* at 3612-22.

Diggs' surgeon prescribed three different types of eyedrops to be administered two or three times a day. *See id.* at 3601 (listing three additional oral medications). Diggs attended follow-up appointments on July 22 and August 9, 2024. *See id.* at 3589–91, 3379. A note made by a BOP employee states that one of Diggs' eyedrop prescriptions was stopped at the second visit and that a follow-up visit in one month should be scheduled. *Id.* at 3379. Despite this note,

---

2. Because the records are not continuously paginated, citations refer to the "PageID" numbers of the medical records in the CM/ECF system.

there is no evidence of any follow-up ophthalmology appointment. Diggs presented at sick call on October 7, 2024, reporting that he was low on eyedrops and that he was experiencing "eyes/vision problems" with his right eye. *Id.* at 3371; *see id.* at 3371–72, 3374. A BOP optometrist saw Diggs the next day and wrote that he should be referred to an outside ophthalmologist due to post-surgical pain. *Id*. at 3372. The referral never occurred. Instead, the BOP transferred Diggs from Kentucky to another facility about two weeks later, and he eventually arrived in Pekin, Illinois, where he is presently housed, on or around November 1, 2024. *See id*. at 3368, 3463–69. The FCI-Pekin medical intake report for Diggs states that his right eye is a "current painful condition." *Id.* at 3465. Elsewhere, the BOP employee who completed the intake form listed several "potential items for follow-up," including the "current painful condition" in Diggs' right eye. *See id.* at 3467. The BOP did not, as far as the records show, make the recommended appointment for Diggs with an ophthalmologist, however.

Five weeks later, on December 9, 2024, Diggs attended a telehealth appointment with a doctor associated with a "chronic care clinic." The doctor's notes indicate that several of Diggs' medical conditions were discussed, including, for example, asthma, hypertension, and an "eye condition." *See id.* at 3359. The doctor does not appear to have been an ophthalmologist. *See id.* Like the optometrist who saw Diggs two months earlier, the doctor who saw Diggs on December 9, 2024, ordered an ophthalmological consult. *Id.* As of April 2025, Diggs had not been seen by, and had no appointment with, an ophthalmologist.

Again, the court received Diggs' pending emergency motion for compassionate release on December 30, 2024. At a status hearing on February 4, 2025, Diggs updated the court on his medical condition and treatment. As summarized in the minute order entered February 20, 2025, Diggs "raised concerns about whether he was receiving timely and adequate care for his eye problems. Among other things, Mr. Diggs stated that his use of prescribed eye drops for an extensive period of time has caused the formation of a cataract which is significantly impeding his vision. His doctor at the BOP recommended on 12/9/24 that he see a specialist, but he has not yet been able to see one as his vision has deteriorated." ECF No. 843 at 1. The minute order

gave Diggs 30 days to indicate whether he wished to continue pursuing compassionate release for medical reasons and, if so, instructed him to "provide the court with a description of his current difficulties and, if possible, a release plan." *Id.* Diggs confirmed the next day that he continues to seek compassionate release on medical grounds. Suppl. Resp. 1 (Feb. 21, 2025), ECF No. 844.

Diggs submitted a supplemental exhibit, which appears to be a printout from a consumer health information website. The exhibit states: "When silicone oil is long-term inside the eye, periodic evaluation is needed to identify and treat late complications." ECF No. 844, Ex. A at 2. The exhibit also lists cataract formation as the most common complication of the use of silicone oil in the eye. *Id.*

Regarding his medical history and condition, Diggs represented [these are his words]:

> 1. He cannot see anything as his vision [in his right eye] continues to deteriorate.
>
> 2. He has pain in his eye, for which no medication is prescribed because there is not a doctor on staff at his facility.
>
> 3. His eye is always red and irritated.
>
> 4. During his July 2024 surgery, the doctor placed a Silicone Oil Bubble in his eye to hold the retina in place. As you will see from the attached Exhibit A, the Silicone Oil Bubble should not have been in his eye longer than 3 months to avoid permanent damage. It has now been in his eye for 7 months. The BOP has not returned him to an eye specialist. It has been Mr. Diggs' fear this entire time, that his vision loss will become permanent the longer he waits to be seen by a specialist.

Suppl. Resp. 1–2 (Feb. 21, 2025).

Diggs also described his release plan. He intends to live in Westchester, Illinois, and he plans to re-enroll in a course he was taking when he was arrested in order to obtain his commercial driver's license. *Id.* at 2. Diggs also intends to follow up with Dr. Amde, an ophthalmologist who saw him in 2023, to obtain treatment for his eye. *Id.* at 3.

The court gave the government an opportunity to respond to Diggs' representations about his medical care and his release plan. Minute order (Feb. 24, 2025), ECF No. 845. The government did so. ECF No. 848. Its one-page supplemental reply recites a portion of the case's

procedural history and then states: "For the reasons set forth in its response to defendant's compassionate release motion, the government respectfully requests that the Court deny defendant's motion." *Id.* at 1 (internal citation to the government's response brief omitted). No effort is made to contest, respond to, or contextualize the BOP's continued failures to comply with doctors' instructions and recommendations regarding needed medical care. *See id.*

Diggs' most recent update comes in his letter dated April 8, 2025, ECF No. 850. Regarding his medical care, Diggs writes, "[M]y own medical issues aren't being addressed properly."[3] *Id.* at 1.

## II. Compassionate Release Standard

Commonly referred to as the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A) provides that the court may reduce a defendant's sentence on motion of the defendant or the BOP, "after considering the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable," if the court finds that "extraordinary and compelling reasons warrant such a reduction." The court must also find "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(ii).

Under Seventh Circuit law, analysis of a compassionate release motion proceeds in two steps. *See United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022); *United States v. Sarno*, 37 F.4th 1249, 1252–53 (7th Cir. 2022). At step one, a defendant "must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *Id.* at 840 (quoting *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021)). If the defendant identifies such a reason, the court proceeds to the second step and "exercis[es] the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part

3. Diggs also attached to his letter dated April 8, 2025, a press clipping reporting on a decision of the United States District Court for the Northern District of California granting compassionate release to Nick Bovis. *See United States v. Bovis*, No. 20-CR-204 (N.D. Cal. Mar. 6, 2025). Having reviewed *Bovis*, the court determines that supplemental briefing is unnecessary. *Bovis* plays no part in today's decision.

of determining what sentencing reduction to award the prisoner." *Id.* (alteration in original) (quoting *Thacker*, 4 F.4th at 576).

## III. EXTRAORDINARY AND COMPELLING REASONS (STEP ONE)

Diggs argues that his deteriorating health and inability to care for his medical needs, specifically his deteriorating retina condition and progressive cataract, constitute extraordinary and compelling reasons to reduce his sentence. *E.g.*, Emergency Mot. Compass. Release 2–4, ECF No. 817. Effective November 1, 2023, the Sentencing Commission adopted a policy statement applicable to prisoner-filed compassionate release motions in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Black*, 131 F.4th 542, 545 (7th Cir. 2025). The Commission has promulgated the following criteria for determining whether medical reasons are "extraordinary and compelling:"

> (b) Extraordinary and Compelling Reasons. – Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant.--
>
> * * * * * * *
>
> (B) The defendant is –
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b).

Although this issue has arisen in other contexts, the government does not argue here that the Commission exceeded its statutory authority when it adopted the "medical reasons" policy statement in § 1B1.13(b)(1). Nor would such an argument succeed. "Congress explicitly

delegated to the [Sentencing] Commission authority to interpret extraordinary and compelling under § 3582(c)(1)(A)." *Black*, 131 F.4th at 546 (citing 28 U.S.C. § 994(t)). As a result of Congress' express delegation, the Sentencing Commission's interpretation of § 3582(c)(1)(A)(i) "supersedes the courts' [interpretation] unless [the Commission's] interpretation exceeds the scope of authority that Congress explicitly delegated." *Id.* at 546 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95 (2024)). The Seventh Circuit has interpreted "extraordinary and compelling" reasons under § 3582(C)(1)(A)(I) to encompass "some new fact about an inmate's health or family status, or an equivalent post-conviction development." *United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023). The Commission's policy statement delineating medical reasons for compassionate release falls squarely within the statute's scope as construed by the Seventh Circuit, so this court "defers to the Commission's policy statement" and applies § 1B1.13(b)(1)'s criteria to decide whether Diggs has demonstrated one or more extraordinary and compelling reasons justifying compassionate release. *Black*, 131 F.4th at 546; *see also United States v. Hill*, 2025 WL 860067, at *7 (N.D. Ill. Mar. 19, 2025).

Under the pertinent policy statement, Diggs must show that he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health."[4] U.S.S.G. § 1B1.13(b)(1)(C). At the hearing held February 14, 2025, Diggs represented that due to the prolonged use of his prescribed eyedrops, a cataract formed in his right eye, and the pain and the cataract are getting worse. *See* minute order (Feb. 20, 2025), ECF No. 843. His BOP doctor recommended that he see a specialist, yet for reasons unexplained, the BOP has not scheduled an appointment. *See id.* Diggs reiterated these representations in his supplemental filing docketed February 24, 2025. *See* ECF No. 844 at 2–3. The government does not reference or counter

4. Diggs' prison medical records span more than 500 pages and include highly technical notes made by surgeons and other medical providers. The court has done its best to understand the risks and potential consequences of the BOP's failure to provide doctor-recommended care and follow-up for Diggs' eye condition.

them in its supplemental reply filed February 28, 2025. *See* ECF No. 848 at 1. They therefore stand uncontested.

There is no reason to believe that the BOP will take the doctor-recommended steps to avert, to the extent possible, the deterioration of Diggs' eyesight and provide him with the medical care his doctors say he needs. Diggs last received ophthalmological care on August 9, 2024. Multiple BOP doctors have ordered follow-up ophthalmological care. None had been scheduled as of April 8, 2025. *See* Diggs letter dated Apr. 8, 2025, at 1, ECF No. 850. Consequently, the facts of this case contrast sharply with cases in which compassionate release was denied because the BOP was adequately providing for the defendant's medical needs. *See, e.g.*, *United States v. Cancino*, 669 F. Supp. 3d 715, 718 (N.D. Ill. 2023) (vision impairment).

Uncontested evidence shows that Diggs risks loss of his eyesight from the growing cataract in his right eye if he does not receive ophthalmological care. *See* ECF No. 844 Ex. A at 2. The risk that a prisoner would lose his eyesight, plus the risk that he would develop secondary glaucoma, prompted Judge Kendall to issue a preliminary injunction in *Foster v. Ghosh*, 4 F. Supp. 3d 974, 981–82 (N.D. Ill. 2013), ordering state prison officials to take a prisoner with a detached retina and cataracts to see a specialist. Like the *Foster* plaintiff, Diggs wishes to see a specialist, Dr. Amde, to make a treatment plan for his cataract and detached retina. Diggs Suppl. Resp. 1–2 (Feb. 21, 2025). Diggs reported at the February 21, 2025, hearing that he is having increasing difficulty seeing through the cataract in his right eye; the occlusion has worsened over the past several months. On this record, Diggs' untreated retinal detachment and growing cataract more than suffice to qualify as risking "serious deterioration in health." U.S.S.G. § 1B1.13(b)(1)(C); *Love v. Nyklewicz*, 641 F. App'x 558, 561–62 (7th Cir. 2016); *Foster*, 4 F. Supp. 3d at 981. Accordingly, extraordinary and compelling reasons for compassionate release have been shown.

## IV. Exercise of Discretion; Weighing of Applicable Sentencing Factors (Step Two)

At step two, the court weighs the "applicable" statutory sentencing factors to determine whether to exercise its discretion to reduce the defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). Applicable factors may include the nature and seriousness of the offense, the need for just punishment and to promote respect for the law, the interest in affording adequate deterrence, the defendant's criminal history, and any danger to the community. *See United States v. Sarno*, 37 F.4th 1249, 1253 (7th Cir. 2022); 18 U.S.C. § 3553(a). Post-sentence rehabilitation never independently justifies compassionate release (this is a categorical rule at step one of the analysis, 18 U.S.C. § 994(t), but the defendant's post-sentencing rehabilitation may be considered among the factors the court weighs at the second step of the inquiry. *See Peoples*, *supra,* 39 F.4th at 842.

As the government argues, the drug trafficking offense for which Diggs' supervision was revoked is a serious crime. It was also non-violent. Furthermore, in the Pennsylvania case the government agreed to permit Diggs to plead to a lesser-included offense charging an amount of cocaine that did not trigger the statutory mandatory minimum. The conduct Diggs admitted in this court and in the Pennsylvania case amounts to being on one or two calls with other members of a drug trafficking conspiracy. *See* Plea Agmt. 1, 4, Pa. case, ECF No. 414-1 (July 24, 2023) (describing offense conduct admitted). The government has never contended in this or the Pennsylvania court that Diggs engaged in violent conduct or carried a firearm in connection with his revocation offense. *See id.* This court nevertheless imposed the maximum revocation sentence authorized by Congress, three years. Diggs has served more than eighty percent of his expected sentence, and the BOP projects that he will be released in approximately three months. In view of his serious and deteriorating medical condition stemming from his 2023 eye injury while in BOP custody, the substantial sentence Diggs has already served adequately provides for just punishment, promotes respect for the law, and addresses deterrence interests.

To be sure, Diggs' history raises concerns about the possibility that he will again resort to criminal activity. The government makes this point in its briefing. *See* Gov't Resp. 9–11, ECF

No. 822. Still, since Diggs will be released from custody now or in three months, the interest in incapacitating Diggs carries less weight than the interest in maximizing the odds that Diggs will reintegrate successfully into society. Diggs has identified a specific residence in Westchester at which he will reside, and he intends to finish a course he started before he was arrested to obtain a commercial driver's license. *See* Suppl. Resp. 2 (Feb. 21, 2025), ECF No. 844. Due to the BOP's failure to provide needed medical care, further incarceration threatens Diggs' hopes of obtaining a commercial driver's license if he loses eyesight in his right eye. Since obtaining stable work and becoming self-sufficient is Diggs' most realistic hope for breaking the cycle of reoffending, the interest in protecting the public by means of his successful rehabilitation tips the balance in favor of a sentence reduction. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (holding that the defendant's employability was a proper consideration at a re-sentencing hearing); *see also United States v. Woods*, 808 F.3d 1177, 1179 (7th Cir. 2015).

## V. CONCLUSION

Curtis Diggs has served a significant portion of his supervised release revocation sentence. He faces the risk of losing the sight in his right eye due to complications from a detached retina and a cataract in his right eye. The BOP has shown no intention and/or ability to provide the necessary care, despite its doctors' recommendations. After considering the applicable policy statements and sentencing factors, the court concludes that the time Diggs has served is sufficient to meet the statutory sentencing objectives. He should be released immediately to receive the medical treatment he needs and to improve his chances of securing employment. Diggs' motion for compassionate release is granted. His sentence is reduced to time served. An amended judgment will be issued immediately.

Date: May 12, 2025

/s/ Joan B. Gottschall
United States District Judge